IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TIMOTHY R. SPRINKLE                                                                          PLAINTIFF

v.                                    Civil No. 12-2134

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                           DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Timothy Sprinkle, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed his DIB and SSI applications on December 14, 2009, alleging an amended onset date of May 9, 2008, due to a sleep disorder, chest pain, joint/muscle pain, lupus, obesity, . Tr. 133-136, 137-142. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 67-71. An administrative hearing was held on December 13, 2010. Tr. 32-66. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 46 years old and possessed a high school education. Tr. 29, 152. He had past relevant work ("PRW") experience as a highway maintenance worker. Tr. 29-30, 147, 154-161.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On March 21, 2011, the ALJ found Plaintiff's status post coronary triple artery bypass grafting ("CABG"), ischemic heart disease, arthralgias (multiple joints), obesity, mood disorder, personality disorder, and alcohol abuse to be severe, but concluded it did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 17-20. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform light work involving occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; and, frequent handling and fingering with his right upper extremity. Tr. 20-24. The ALJ also found that Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks, respond appropriately to supervisors, coworkers, and usual work situations, but could have only occasional contact with the general public. With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a production worker, laundry worker, and poultry eviscerator. Tr. 25-26.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 5, 2012. Tr. 1-5. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 12.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the

court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment.  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace.  *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).  The Court has held, however, that the ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings.  *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982).  And while the issue is not the existence of pain, the issue is whether the Plaintiff's experience of pain precludes substantial gainful activity.  *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

As previously mentioned, the ALJ concluded that Plaintiff could perform light work involving occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; and, frequent handling and fingering with his right upper extremity. However, the record contains evidence indicating that Plaintiff's impairments were more limiting. On July 10, 2006, Dr. C. R. Magness performed a general physical examination finding a 10% impairment in speech; a decreased range of motion in the right shoulder, right wrist, and left hip; ulnar nerve palsy in the right hand; muscle atrophy in the right hand; a sensory abnormality in the right ulnar distribution; a marginal ability to hold a pen and write; an inability to touch fingertips to palm with the right hand; decreased grip strength in the right hand; bilateral stasis dermatitis; bilateral scars from healed ulcers; and, a serious mood disorder.   Tr. 344-352. Dr. Magness diagnosed Plaintiff with coronary artery disease ("CAD"), angina, peripheral vascular disease, claudication, hypertension, hyperlipidemia; chronic obstructive pulmonary disease ("COPD"), degenerative joint disease ("DJD") of the left hip and bilateral lower extremities, brachial plexus, palsy in the left hand; and a left rotator cuff impairment. He

4

assessed Plaintiff with severe limitations walking, carrying, handling, and fingering, and moderate to severe limitations standing, sitting, and lifting.

From September 2008 until December 2009, Plaintiff was treated at the Health and Wellness Center for complaints of lower back pain and joint pain. Tr. 385-389. He was diagnosed with lumbago, multiple arthralgias, and right lateral epicondylitis. Examinations revealed discomfort with range of motion in the shoulders, elbows, and knees with a firm bony protuberance of the right lateral knee and point tenderness over the right epicondyle. Plaintiff was prescribed Medrol and given an injection and a velcro tennis elbow strap to be worn during the day for the next 4-6 weeks.

On February 17, 2010, Plaintiff was treated by Dr. Mark Rogow for chest pressure, chronic pain, anxiety, and depression. Tr. 493-494. He experienced chest pressure a couple times a week; was very anxious at times, experienced occasional suicidal thoughts with sleep disturbance, and complained of leg cramps. An examination revealed moderate to severe acute distress; a bony deformity in the knees; swollen and tender hips with the right side greater than the left; and, a decreased range of motion in the shoulders and back with tenderness. Dr. Rogow diagnosed him with multiple arthralgias, lumbago, CAD, and osteoarthritis ("OA") in multiple sites.

A follow-up exam on February 24, 2010, revealed a limp, obvious acute distress; knee tenderness with a decreased range of motion, and back and lumbosacral paraspinal tenderness with a decreased range of motion. Tr. 495. Dr. Rogow diagnosed Plaintiff with CAD, OA in multiple sites; multiple arthralgias, lumbago, and lateral epicondylitis.

This same date, Dr. Rogow completed an Attending Physician's Statement. Tr. 260. He indicated that Plaintiff's diagnoses were CAD, OA in multiple sites; multiple arthralgias lumbago, and epicondylita. Dr. Regow determined that Plaintiff's symptoms were severe enough to interfere with his attention and concentration, to affect his ability to tolerate work stress, and to likely cause him to miss four or more days of work per month. He also opined that Plaintiff would need unscheduled work breaks

5

during an eight hour shift; could not use his feet for repetitive movements; and, could not use his hands for repetitive action such as grasping, pushing/pulling, and fine manipulation. Tr. 260.

On March 24, 2010, Plaintiff followed up with Dr. Rogow complaining of continued pain in his knees. Tr. 496. He was limping, his knees were tender and mildly swollen with a positive bony deformity, and he exhibited a decreased range of motion in both knees. Dr. Rogow administered injections into both knees. Tr. 496.

On April 22, 2010, Plaintiff returned for additional injections in his knees, complaining of anxiety. Tr. 497. He indicated that he was "stressed to the max." Dr. Rogow noted that his knees were very painful, tender, and swollen, and he exhibited mild resting tremors. Tr. 497.

On April 29, 2010, Plaintiff underwent a general physical examination with Marie Pham-Russell, a nurse practitioner for Dr. Rebecca Floyd. Tr. 414-417. Nurse Pham-Russell diagnosed Plaintiff with arthralgia in the knees, lower back, and shoulders; arthritis in the left hand with atrophy; status post gun shot wound to the right shoulder, CAD, depression, and post traumatic stress disorder ("PTSD"). Tr. 417. She opined that Plaintiff had mild to moderate limitations with regard to lifting and handling with his right hand.

We also note that his most recent heart catheterization, dated December 2006, revealed lower limits of normal left ventricle function, a 100% occluded mid left anterior descending artery, small to moderate sized proximal stenosis of the circumflex with a vein graft patent to the obtuse margin, 100% occluded right coronary artery with a vein graft times two to the posterior descending artery, and considerable disease of the diagonal that was treated with medical therapy. Tr. 485-486. Further complicating his situation, the evidence also reveals that Plaintiff was obese.

After reviewing the evidence of record, we believe remand is necessary to allow the ALJ to revisit the issue of RFC. The aforementioned evidence calls into question Plaintiff's ability to stand and walk for 6 hours per day, frequently finger and handle with his right hand, and use his left upper

extremity. On remand, the ALJ should also recontact Nurse Pham-Russell and Dr. Magness regarding their definition of the terms moderate and severe and the exact functional limitations this level of impairment would have on Plaintiff's ability to perform work-related activities on a daily basis. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped" or under developed).

IV. **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 10th day of July 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)